An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1079
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

v.                                         Forsyth County
                                          No. 12 CRS 60503
DAMEON JOSE GLOVER


Appeal by defendant from judgment entered 9 April 2013 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals on 31 March 2014.

> *Roy Cooper, Attorney General, by Janelle E. Varley, Assistant Attorney General for the State.*
>
> *J. Edward Yeager, Jr. for defendant-appellant.*


DAVIS, Judge.

Dameon Jose Glover ("Defendant") appeals from a judgment entered upon a jury verdict finding him guilty of assault inflicting serious bodily injury. On appeal, he argues that (1) the trial court abused its discretion by denying his pre-trial discovery motion; and (2) the trial court erred in finding that his federal conviction of bank robbery was substantially similar

to the North Carolina crime of common law robbery. After careful review, we affirm.

## Factual Background

The State presented evidence at trial tending to establish the following facts: On 5 October 2013, at approximately 1:36 a.m., Defendant entered the West End Opera House, a bar in Winston-Salem, North Carolina, with his friend, Torian Williams ("Mr. Williams") and sat next to a billiards table. Another patron, Derek Pasko ("Mr. Pasko"), walked over to Defendant, and they engaged in conversation. The conversation soon escalated into an argument. The bar manager asked: "[I]s everything all right?" Mr. Williams responded: "[I]t's cool."

Mr. Pasko then exited through the rear door of the bar and encountered a friend, Michael Thompson ("Mr. Thompson"), in the parking lot behind the bar. Defendant and Mr. Williams followed Mr. Pasko outside. As Mr. Pasko and Mr. Williams exchanged words, Defendant approached Mr. Pasko and landed a punch to Mr. Pasko's face. Mr. Pasko collapsed to the ground. Mr. Thompson then ran into the bar to get help and an ambulance was called. Defendant followed Mr. Thompson back to the bar but did not enter. Instead, Mr. Williams picked up Defendant in a car and drove away from the scene.

On 16 October 2012, a warrant was issued, and Defendant was arrested at his residence by Officer Aaron Jessup ("Officer Jessup"). Officer Jessup transported Defendant to the law enforcement detention center located at the Forsyth County Jail. Once at the jail, Defendant was issued a *Miranda* warning, which he acknowledged receiving. Officer Jessup testified at trial that Defendant stated that he had been approached by a "white male . . . [who] was aggressive and had words with his friend [Mr. Williams and] at one point . . . slapped his friend [Mr. Williams] on the buttocks inside the business where they were playing pool . . . they had words, and they went outside the business, and that is where [Defendant] said the altercation began." Officer Jessup also testified that Defendant stated "that he struck the white male in self-defense."

The West End Opera House is equipped with a 15 camera video surveillance system that records 24 hours a day without audio. Two police officers reviewed the videos recorded by the surveillance system on the night of the incident along with the owner and manager of the bar. The bar owner provided the police officers with two recorded compact discs that included all the footage of Defendant on 5 October 2012 from the time he entered the bar at approximately 1:36 a.m. until the time he drove away

at approximately 2:30 a.m. The State then provided the two videos to Defendant on 12 December 2012.

Defendant requested additional discovery on 15 January 2013, specifically asking for "the video surveillance from the surveillance camera . . . focused on the front entrance of the West End Opera House." The State responded that Officer Griffith – the police department's case manager – had "no knowledge of any video being in the possession of the Winston-Salem Police Department that would have come from any surveillance camera located at the front of the West End Opera House."

On 26 November 2012, Defendant was indicted by the Forsyth County grand jury on the charge of assaulting Mr. Pasko and inflicting "serious bodily injury" causing a skull fracture, eye socket fracture, and multiple facial fractures.

On 3 April 2013, Defendant filed a pre-trial motion asking for "access to the remaining video surveillance not previously provided by the State," and "[i]n the event that said video surveillance [has] been destroyed or is otherwise unavailable, then an Order should be entered by the Court preventing the State be barred [sic] from playing its video during a trial of this matter." Defense counsel noted that there had been a

confrontation outside the bar and "words were exchanged just outside the front door of the Opera House." For this reason, defense counsel explained she sought access to any video surveillance recorded from a camera located above the front door. The State responded that any other existing surveillance videos had never been in the State's possession and that the two videos that the State did possess had been provided to Defendant's counsel and were going to be introduced as evidence. The trial court ruled that the State would be permitted to introduce the two videos and denied Defendant's motion.

A jury trial was held beginning on 8 April 2013. On 9 April 2013, Defendant was found guilty of assault inflicting serious bodily injury and was sentenced to 25-39 months. Defendant gave notice of appeal in open court.

**Analysis**

**I. Denial of Pre-Trial Discovery Motion**

Defendant argues the trial court abused its discretion in denying Defendant's motion seeking access to the remaining video surveillance not previously provided by the State, alleging the State was allowed to "introduce incomplete evidence in the form of partial video recordings which did not record the entire encounter between Defendant and Mr. Pasko." We disagree.

Discovery in criminal superior court cases is governed by Chapter 15A, Article 48 of the North Carolina General Statutes. Section 15A-903 specifically governs disclosure of evidence by the State and provides in pertinent part:

> (a) Upon motion of the defendant, the court must order:
>
> (1) The State to make available to the defendant the complete files of all law enforcement agencies, investigatory agencies, and prosecutors' offices involved in the investigation of the crimes committed or the prosecution of the defendant.
>
> a. The term "file" includes the defendant's statements, the codefendants' statements, witness statements, investigating officers' notes, results of tests and examinations, or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant. . . .
>
> . . . .
>
> d. The defendant shall have the right to inspect and copy or photograph any materials contained therein and, under appropriate safeguards, to inspect, examine, and test any physical evidence or sample contained therein.

N.C. Gen. Stat. § 15A-903(a)(1)(a),(d) (2013).

"If a trial court determines that the State has violated statutory discovery provisions or a discovery order, it may impose a wide array of sanctions including dismissal of the

charge with or without prejudice." *State v. Dorman*, ___ N.C. App. ___, ___, 737 S.E.2d 452, 470 (citing N.C. Gen. Stat. § 15A-910(a)(3b)), *appeal dismissed and disc. review denied*, ___ N.C. ___, 743 S.E.2d 205 (2013). "On appeal, we review the trial court's decision to impose discovery sanctions for an abuse of discretion." *Id.* "The trial court may be reversed for an abuse of discretion in [addressing alleged discovery violations] only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Carson*, 320 N.C. 328, 336, 357 S.E.2d 662, 667 (1987) (citation omitted).

Here, Defendant sought an order from the trial court compelling the State to give him access to video surveillance from all of the video cameras at the bar, particularly the video from the camera at the front door. However, the State only collected video surveillance from two of the fifteen cameras and did not collect the video from the front door camera. As the State was never in possession of the video surveillance requested by Defendant, we hold that the trial court did not abuse its discretion in denying Defendant's discovery motion. *See State v. Morris*, 156 N.C. App. 335, 341, 576 S.E.2d 391, 395, (stating that, under prior version of N.C. Gen. Stat. §

15A-903, defendant was not entitled to discovery of requested materials because State never possessed or controlled them or intended to use them as evidence against defendant) *cert. denied*, 357 N.C. 510, 588 S.E.2d 379 (2003); *cf. State v. Lynn*, 157 N.C. App. 217, 221-22, 578 S.E.2d 628, 632 (2003) (holding in context of *Brady* analysis that "[t]he State . . . is under a duty to disclose only those matters in its possession and is not required to conduct an independent investigation to locate evidence favorable to a defendant" (citation and quotation marks omitted)).

## II. Similarity Between Defendant's Prior Federal Conviction and His North Carolina Common Law Robbery Conviction

Defendant also argues the trial court erred in calculating his prior record level because it erroneously concluded that his federal conviction for bank robbery was substantially similar to North Carolina's offense of common law robbery. Defendant contends the State provided no evidence as to the nature of the bank robbery and thus did not show that his actions on that prior occasion were substantially similar to the acts that constitute common law robbery in North Carolina. Defendant's arguments are misplaced.

"The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the

offender's prior convictions . . . ."  N.C. Gen. Stat. § 15A-1340.14(a) (2013).

> If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2013).

"[T]he question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law requiring *de novo* review on appeal."  *State v. Fortney*, 201 N.C. App. 662, 669, 687 S.E.2d 518, 524 (2010) (citation and internal quotation marks omitted).  In determining "whether the out-of-state conviction is substantially similar to a North Carolina offense," the trial court must compare "the *elements* of the out-of-state offense to those of the North Carolina offense."  *Id.* at 671, 687 S.E.2d at 525 (emphasis added and citation omitted).  Because the focus of the "substantially similar" test is on the *elements* of the offenses, and not the *facts* of the specific crimes, Defendant's contention that the State failed to provide evidence of the

specific factual nature of the prior bank robbery is without merit.

Turning to the elements of each offense, we conclude the trial court did not err in concluding the offenses are substantially similar. The elements of common law robbery are "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L.Ed.2d 622 (1982). The "violence or fear" necessary to accomplish the taking for purpose of common law robbery has been repeatedly held to include intimidation. *See State v. Sipes*, 233 N.C. 633, 635, 65 S.E.2d 127, 128 (1951) (defining common law robbery as "the felonious taking of personal property from the person of another, or in his presence, without his consent, or against his will, by violence, *intimidation* or putting in fear" (emphasis added)); *cf. State v. McDonald*, 130 N.C. App. 263, 267, 502 S.E.2d 409, 412 (1998) (holding "fear or *intimidation* is a material fact in issue regarding the offense of armed robbery" (emphasis added)). Here, Defendant does not challenge the State's assertion that he was convicted of the federal offense of bank robbery pursuant to 18 U.S.C. § 2113(a), which punishes:

> [w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association[.]

*Id.*

Thus, both offenses require the taking of property by either force, violence, fear or intimidation. The major difference between the two crimes is that the North Carolina offense applies to all victims, whereas the federal offense is limited to victims who are banks, credit unions or savings and loan associations.[1] Accordingly, we conclude these offenses are "substantially similar" to each other for purposes of N.C. Gen. Stat. § 15A-1340.14(e) and that the trial court did not err in calculating Defendant's prior record level.

### Conclusion

For the reasons stated above, we affirm.

AFFIRMED.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).

---

[1] Defendant does not raise this distinction in support of his argument on this issue.